IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON

IN AND FOR THE COUNTY OF KITSAP

| | |
|---|---|
| AYNA AMANDA MEPPELINK, | Case No.: 17-2-00839-9 |
| Plaintiff, *in pro per* | |
| vs. | AMENDED COMPLAINT RE: CLAIMS FOR WRONGFUL FORECLOSURE, VIOLATION OF REGULATION X OF RESPA (12 U.S.C. § 2601 *et seq*), DECLARATORY RELIEF and DAMAGES |
| WILMINGTON SAVINGS FUND SOCIETY, FSB, d/b/a CHRISTIANA TRUST, trustee for PRETIUM MORTGAGE ACQUISITION TRUST; SELENE FINANCE; and QUALITY LOAN SERVICE CORP. OF WASHINGTON, | |
| Defendants. | |

The plaintiff, by way of amendment to her complaint previously filed in this matter on May 17, 2017, states as follows:

### I. Identification of Parties.

1. Plaintiff Ayna Amanda Meppelink ("Plaintiff") is a resident of Kitsap County, Washington, and the owner of certain real property commonly referred to as 11700 Carriage Place SE, Olalla, Washington 98359 ("the Property").

2. Defendant Wilmington Savings Fund Society ("WSFS"), FSB, d/b/a/ Christiana Trust is a division of WSFS Bank and a wholly owned subsidiary of WSFS Corporation, incorporated in Delaware. Christiana Trust is the trustee for Pretium Mortgage Acquisition Trust ("Pretium"), which is presumed to claim to be holder of a mortgage-backed security that includes the deed of trust (sometimes referred to as "mortgage") for the Property.

# EXHIBIT "A"

(Wilmington Savings Fund Society, FSB, d/b/a Christiana Trust, trustee for Pretium Mortgage Acquisition Trust henceforth will be collectively referred to as "Wilmington".)

3. Defendant Selene Finance ("Selene") is believed to be a residential mortgage servicing company incorporated in Delaware, and agent for Wilmington.

4. Defendant Quality Loan Service Corp. of Washington ("QLS") is incorporated in Washington State and is the trustee responsible for administering the non-judicial foreclosure of the Property on behalf of Wilmington.

## II. Jurisdiction and Venue

5. This court has jurisdiction over this action and these parties pursuant to RCW 2.08.010 and RCW 4.12.010.

6. Venue in this court is proper because the mortgage interest alleged by Wilmington encumbers the Property situated in Kitsap County, Washington.

## III. Statements of Fact

7. The Property is identified by Kitsap County as parcel number 6022-000-002-0009, and is legally described as:

LOT 2, HIDDEN ACRES, ACCORDING TO THE PLAT RECORDED IN VOLUME 24 OF PLATS, PAGES 12, 13, AND 14, IN KITSAP COUNTY, WASHINGTON; TOGETHER WITH AN EASEMENT FOR INGRESS, EGRESS AND UTILITIES AS RECORDED UNDER AUDITOR'S FILE NO. 1113398, 7903090079, 7901050085, 7810030106 AND 8403130119.

8. On April 6, 2007, the Plaintiff obtained a loan to pay off two existing Countrywide loans. The Deed of Trust ("DOT") encumbering the Property recognizes Mortgage Electronic Registration System ("MERS") as the beneficiary and Kitsap Community Federal Credit Union as the lender.

9. On April 17, 2007, ReconTrust Company, N.A. ("RT") caused the recordings with the Kitsap County Auditor of two Substitutions of Trustee and Full Reconveyances by RT and MERS to RT. EXHIBIT A. These Substitutions of Trustee and Full Reconveyances ("STFRs") were void for the following reasons:

    a. RT was both grantor and grantee on the STFRs; as a subsidiary of Bank of America ("BOA"), RT could not be an independent trustee. *Bradburn v. ReconTrust Company, et al.*, No 11-2-08345-2.

    b. Not ever having held the Note, MERS was not a lawful beneficiary and could not act for the lender: MERS could neither lawfully appoint a trustee as defined in RCW

61.24.005(2), nor reconvey any interest in the Estate. *Bain, et al. v. Mortg. Elec. Registration Sys., et al.*, No. 86206-1.

c. The two loans Countrywide required Plaintiff to sign for in 2005, when Plaintiff purchased the home, were merged on April 6, 2007, when Plaintiff refinanced the loan. On April 17, 2007, the two loans the STFRs reference no longer existed.

d. The signatures on the STFRs of both Kathy Cochran (RT) and Maria Robledo (MERS) are suspect, not only because they are exactly the same on both STFRs, so they are either stamps or copied in, but also because Cochran and Robledo are known robo signers according to, among other sources, the OC Forensic Examination (OC Forensic):

> *Forensic Examination of the Real Property Records and the Circuit Court Records, Osceola County, Florida.* Examination Conducted by DK Consultants, LLC, San Antonio, Texas: July 14, 2014 - December 20, 2014. Report Issued: December 29, 2014. The full report is available online at:
> https://www.osceolaclerk.com/Content/UploadedContent/Examination/OC_Forensic_Examination.pdf

10. The Plaintiff made mortgage payments on the loan until late 2009. At that time she was working with the former loan servicer, BOA, to modify the loan to provide a more affordable payment.

11. On October 17, 2011, CoreLogic caused the recording with the Kitsap County Auditor of an Assignment of Deed of Trust, with all beneficial interest and together with the Note(s), by MERS to BOA (successor to Countrywide Home Loan Servicing). EXHIBIT B. This Assignment of Deed of Trust and Note was void for the following reasons:

a. Not ever having held the Note, MERS could not lawfully assign the DOT "together with the note" to BOA. *Bain v. Metropolitan*.

b. On May 3, 2009, BOA informed Plaintiff that Federal National Mortgage Association (FNMA) had been the noteholder since shortly after the loan was originated in 2007, although no recording of this appears to exist.

c. This Assignment was signed for MERS by "Cynthia Romo," a known robo signer whose signature was also fraudulently applied by other robo signers according to OC Forensic Examination, previously mentioned. In 2012, the Romo signature appears on assignments for both MERS and BOA. Plaintiff has collected as evidence thirteen (13) other assignments bearing a "Cynthia Romo" signature, a number of which widely vary in appearance. EXHIBIT C.

    d. The Assignment inaccurately states that the Assignee's (BOA's) address is "13150 Worldgate Dr, Herndon, VA 20170," when in fact that is the address of a building the Federal National Mortgage Association ("FNMA") bought in 1993 and sold in 2018. This was not the correct address of BOA in 2011, nor at any other time. The Worldgate address appears for FNMA in the Assignment of Deed of Trust from FNMA to Wilmington, recorded on May 6, 2016.

12. Between February 14, 2011, and July 15, 2013, the Plaintiff received at least four (4) Notices of Intent to Accelerate the loan from BOA.

13. Loan servicing transferred from BOA to Seterus, effective April 1, 2015.

14. On May 1, 2015, CoreLogic Solutions caused the recording with the Kitsap County Auditor of an Assignment of Deed of Trust, with all beneficial interest and together with the Note, by BOA to FNMA. EXHIBIT D. The Assignment of Deed of Trust was void for the following reasons:

    a. The previous assignment by MERS to BOA, on October 17, 2011, was void.

    b. On May 3, 2009, BOA informed Plaintiff that FNMA had been the noteholder since shortly after the loan was originated in 2007.

    c. During a telephone conversation, on November 18, 2010, Tanna Hicks, of the Office of the CEO and President of BOA, informed Plaintiff that BOA was never in possession of the original Note and Deed of Trust. Moreover, Hicks stated that, because of MERS, all the original paperwork was destroyed sometime earlier.

    d. Never lawfully having held the Note, BOA could not have assigned the Note to FNMA.

15. On May 6, 2016, Meridian Asset Services caused the recording of an Assignment of Deed of Trust, together with all beneficial interest and the Note, by FNMA to Wilmington. EXHIBIT E. Plaintiff's loan was included in a pool of a "non-performing" loans, sold by FNMA to Pretium. EXHIBIT F. The Assignment was signed by Bryan Sauer of Pretium Mortgage Credit Partners ("Pretium MCP") as attorney-in-fact for FNMA. This Assignment of Deed of Trust was void for the following reasons:

    a. The previous Assignment of Deed of Trust, with all beneficial interest and together with the Note, on May 1, 2015, by BOA to FNMA was void. Hence, this Assignment of Deed of Trust, together with all beneficial interest and the Note, by FNMA to

Wilmington, is also void. Wilmington is therefore not a lawful beneficiary.

b. Directly related to the above, in an undated, typed Note Allonge, FNMA also assigned the Note to Wilmington. EXHIBIT G. The Allonge was purportedly signed by Steve Allison of Pretium MCP, as attorney-in-fact for FNMA. The signature of Steve Allison on the Note Allonge is suspect: it differs markedly from another "Steve Allison" signature on the Assignment of Deed of Trust recorded in Skagit County on February 7, 2017. EXHIBIT H.

16. Loan servicing transferred from Seterus to Selene, effective May 1, 2016.

17. On June 10, 2016, the Plaintiff received a loan modification application package from Selene.

18. On June 22, 2016, the Plaintiff received a Validation of Debt Notice from Selene, informing that Selene would assume the stated debt amount was valid unless Plaintiff responded within thirty (30) days.

19. On July 15, 2016, Plaintiff sent Selene a Qualified Written Request ("QWR") disputing the debt, pursuant to the Real Estate Settlement Procedures Act ("RESPA") 12 U.S.C. § 2605(e). EXHIBIT I.

20. On July 26, 2016, the Plaintiff received a Notice of Default and Intent to Accelerate from Selene, dated July 20, 2016. EXHIBIT J. No Notice of Preforeclosure Options ("NOPFO"), as required under RCW 61.24.031(1), had been sent to the Plaintiff by Selene prior to this date.

21. On July 25 and August 1, 2016, the Plaintiff sent additional QWRs to Selene.

22. On September 6, 2016, the Plaintiff received a NOPFO from Selene. EXHIBIT K. The NOPFO was significantly out of compliance with RCW 61.24.031(1)(c)(i-iv), because it was missing certain required text and changes were made to the prescribed text. For example, the word "beneficiary" appeared nowhere in Selene's notice, and the servicer omitted or altered the following required text:

a. "If you filed bankruptcy or have been discharged in bankruptcy, this communication is not intended as an attempt to collect a debt from you personally, but is notice of enforcement of the deed of trust lien against the property. If you wish to avoid foreclosure and keep your property, this notice sets forth your rights and options." Selene completely omitted this paragraph.

b. "61.24-031(1)(c)(iii) A paragraph stating that a housing counselor may be available at little or no cost to the borrower and that whether or not the borrower contacts a housing counselor or attorney, the borrower has the right to request a meeting with the beneficiary..." Selene omitted the underlined part of this sentence.

c. "61.24-031(1)(c)(iv) A paragraph explaining how the borrower may respond to the letter and stating that after responding the borrower will have an opportunity to meet with his or her beneficiary..." Selene omitted the underlined text; "...in an attempt to resolve and try to work out an alternative to the foreclosure" Selene changed the underlined text to: "to assess your financial ability to modify or restructure the loan obligation or consider other alternatives to foreclosure"; "...and that, after ninety days from the date of the letter, a notice of default may be issued, which starts the foreclosure process." Selene placed an altered version of this underlined text at the bottom of the letter, in a section it called "Following the Meeting," thus separating this vital information from the required paragraph and diminishing its impact.

23. On September 13 and September 26, 2016, the Plaintiff sent QWRs to Selene, in the latter QWR requesting a "meet and confer" conference under RCW 61.24.031. EXHIBIT L.

24. On October 31, 2016, the Plaintiff received a letter, dated October 26, 2016, from the McCarthy Holthus law firm ("MH") in its capacity as agent for Selene, unilaterally directing the Plaintiff to attend a meeting in Kitsap County on January 10, 2017. EXHIBIT M.

25. The Plaintiff responded by making several attempts to reschedule the meeting, unilaterally set by MH for January, due to conflicting medical procedures she had scheduled. MH acknowledged receiving this request on November 10, 2016. EXHIBIT N. However, MH did not respond to the Plaintiff's request to reschedule until February 7, 2017.

26. On January 11, 2017, the Plaintiff sent a QWR to Selene in response to its December 30, 2016 letter, thereby also informing Selene that she was still waiting for MH to reschedule the meeting. EXHIBIT O.

27. On January 19, 2017, QLS caused the recording of a Power of Attorney (POA) in which Selene (the servicer, named as grantor) granted Power of Attorney to Wilmington (the purported Beneficiary, named as grantee). EXHIBIT P.

    a. Since QLS caused the recording and the instructions on the document required that the POA be returned to QLS after recording, QLS should have been well aware that the POA

was defective and that the recording of same was negligent (RCW 9A.08.010).

b. While there is no legal requirement to record POAs, the recording of this POA inaccurately gave notice to the public of a POA from Selene to Wilmington, et al.

c. Selene acted upon this POA as if it were valid and on February 27, 2017, appointed QLS as Successor Trustee.

d. On March 25, 2019, when Plaintiff visited the Kitsap County Auditor's office, the recording officer could find no recording of a valid POA granted by Wilmington to Selene, correcting the recorded POA of January 19, 2017.

28. On January 20, 2017, the Plaintiff received a Validation of Debt Notice, dated January 17, 2017, from QLS, informing her that QLS had "been instructed to commence foreclosure proceedings" against Plaintiff's property and would assume the stated debt amount was valid unless Plaintiff responded within thirty (30) days. EXHIBIT Q. The issuance of QLS's Validation of Debt Notice preceded the recording of QLS as successor trustee (on February 27, 2017) by forty-one (41) days, in violation of RCW 61.24.010(2).

29. On January 21, 2017, the Plaintiff responded to QLS's Validation of Debt Notice using a QWR format, disputing the debt. EXHIBIT R. The Plaintiff also requested that QLS provide the names of the entity, department, and person who had instructed QLS to begin foreclosure proceedings; she informed QLS that MH was still to set up the meeting; and, she requested a full account history and the name of the original creditor and current holder of the Note and Deed of Trust, informing QLS that Selene had refused to provide this information a number of times.

30. In a letter dated January 30, 2017, Mr. McDonald of QLS referred the Plaintiff to Selene for the information she had requested. EXHIBIT S. Mr. McDonald furthermore stated, "The Trustee received information the loss mitigation meeting was held as scheduled but you did not attend." The source of this inaccurate information was not disclosed.

31. On February 2, 2017, after multiple attempts to send emails via QLS's malfunctioning website, Plaintiff called Mr. McDonald for clarification of his assertion that the meeting was held but she did not attend. Mr. McDonald claimed that MH had provided that information.

32. On February 7, 2017, attorney Samuel Burton of MH sent Plaintiff an email citing personnel changes at the firm as reason for the delay in responding. Attorney Burton proposed to reschedule the meeting for the dates March 3 or April 3 through 5, 2017. EXHIBIT T

AMENDED COMPLAINT                           AYNA MEPPELINK, PLAINTIFF

7

33. The Plaintiff responded to Mr. Burton by email on February 11, 2017, selecting April 5, 2017, as the meeting date. EXHIBIT U. No representative from MH subsequently contacted the Plaintiff to change the meeting date she had been given the option of selecting.

34. On February 13, 2017, the Plaintiff responded in writing to Mr. McDonald's letter of January 30. EXHIBIT V. The Plaintiff referred to the conversation she had with Mr. McDonald on February 2 and included a copy of Mr. Burton's letter apologizing for the delay in responding to Plaintiff's request to reschedule the meeting. The Plaintiff furthermore questioned the legitimacy of QLS acting as the trustee.

35. On February 13, the Plaintiff received a letter from defendant Selene, dated February 9, 2017, incorrectly stating that the meeting had taken place on January 10, 2017, but that Plaintiff failed to appear. EXHIBIT W.

36. On February 16, 2017, the Plaintiff emailed Mr. Burton, requesting that he intervene and inform both Selene and QLS that: the January 10 meeting should have been cancelled (if it was indeed actually held); MH was rescheduling the meeting; and, QLS should refrain from taking any action. In a reply email, dated February 20, 2017, attorney Burton stated: "We are in the process of scheduling another face to face meeting. My staff will reach out to you this week to set that up." EXHIBIT X. By March 13, 2017, MH had neither reached out to finish setting up the meeting in regard to time and place, nor apparently informed either Selene or QLS that the January 10 meeting should have been cancelled.

37. On February 27, 2017, ServiceLink Title Agency, Inc., caused the recording of an Appointment of Successor Trustee, which Selene's "Haley Pope" signed as attorney-in-fact for Wilmington, thereby purportedly appointing QLS as successor trustee. EXHIBIT Y.

   a. Because Selene was an unlawful attorney-in-fact acting for Wilmington, an *improper* beneficiary, Selene had no authority to appoint a successor trustee: "Under the Deeds of Trust Act, only a properly appointed trustee may conduct a nonjudicial foreclosure. Moreover, only a proper beneficiary has the power to appoint a successor to the original trustee named in the deed of trust." *Bavand v. One West Bank, F.S.B.*, 176Wn. App.475, 486, 309P. 3d 636 ¶ 17 (2013).

   b. Since the Assignment of Deed of Trust (recorded on May 6, 2016) together with all beneficial interest and the Note(s) by FNMA to Wilmington was void, Wilmington was and is not a "proper" beneficiary.

c. Thus, the Appointment of Successor Trustee by Wilmington's agent Selene, signing under a questionable or non-existing attorney-in-fact for Wilmington, is void.

d. There being no proper beneficiary, the servicer had no authority to appoint QLS as Trustee or to direct QLS to foreclose (RCW 11.125.050).

38. On March 3, 2017, QLS initiated the nonjudicial foreclosure process by issuing a Notice of Default prior to the scheduled meeting on April 5, 2017. EXHIBIT Z. The Beneficiary Declaration was defective in that, in violation of RCW 61.24.031(9), it did not include the "Foreclosure Loss Mitigation Form," or any text which should have stated whether or not a meeting had been requested and/or taken place. The meeting was not mentioned. The Declaration was furthermore defective in that "Dawn Berry" signed the Declaration as an employee of Selene and "Attorney-in-Fact" for Wilmington, even though the POA recorded is from Selene to Wilmington.

39. The nonjudicial foreclosure process was initiated prior to the agreed-upon meeting in violation of RCW 61.24.031.

40. The commencement of the nonjudicial foreclosure process at the same time the Plaintiff was in negotiations with defendant Selene's agent MH to "meet and confer" constitutes a violation of federal law prohibiting the practice of dual-tracking.

41. To date, the meeting has not taken place.

42. On March 6, 2017, the Plaintiff received a second Validation of Debt Notice from QLS.

43. On March 6, 2017, the Plaintiff sent Mr. McDonald of QLS a written demand for retraction of the Notice of Default, informing QLS that the information the trustee had received from Selene was inaccurate, as the meeting had not taken place. EXHIBIT AA. The Plaintiff reminded Mr. McDonald that, on February 13, she had supplied him with the recent correspondence from Mr. Burton regarding the rescheduling of the meeting.

44. By email dated March 7, 2017, Plaintiff informed attorney Burton that defendant QLS, acting as trustee and at the direction of defendant Selene, had commenced the nonjudicial foreclosure of Plaintiff's Property. The commencement was supposedly based upon a statement from MH that the "meet and confer" had taken place on January 10, 2017, but Plaintiff had failed to appear. In a reply email dated March 7, 2017, attorney Cruz Turcott of MH stated, "I am writing to confirm that I received your message. I will investigate the

situation you described, and follow up with you as soon as I can." EXHIBIT BB. However, no follow-up occurred.

45. On April 10, 2017, QLS commenced the second phase of the nonjudicial foreclosure process by mailing and recording the Notice of Trustee's Sale ("NOTS"), scheduling a Trustee's Sale date of August 11, 2017. EXHIBIT CC.

46. On April 12, 2017, QLS caused a copy of the NOTS to be posted on Plaintiff's home.

47. The Plaintiff commenced this action on May 15, 2017, to stay the nonjudicial foreclosure process, seeking a temporary injunction for that purpose.

48. By order dated September 8, 2017, the nonjudicial foreclosure process was stayed pending further order of this court.

49. By order dated May 17, 2019, the Plaintiff was granted leave to amend her complaint challenging the nonjudicial foreclosure process pursued by the defendants by presenting her claims of wrongful foreclosure.

50. Defendant Wilmington failed to provide proof of a legitimate assignment of the Deed of Trust for the Property, thus a clean chain of title, prior to the appointment of QLS as successor trustee.

51. The actions of QLS, in commencing the nonjudicial foreclosure process by issuing the Validation of Debt Notice and subsequently the Notice of Default and Notice of Trustee Sale when QLS lacked authority to institute that process, are in violation of Chapter 61.24 RCW, also known as the Deeds of Trust Act ("DOTA"). The DOTA requires strict compliance with the nonjudicial foreclosure process due to the lack of judicial oversight.

52. The defendants' failure to comply with the DOTA eliminates the possibility of seeking reinstitution of a trustee's sale date, following entry of a hypothetical order favorable to the defendants, as permitted by RCW 61.24.130(3). The defendants' nonjudicial process is defective.

### IV. First Amended Cause of Action—Defendant Wilmington Lacks Proof of Clean Chain of Title to Deed of Trust Securing Plaintiff's Property.

1. Defendants Wilmington and Selene, or any of their successor agents, lack the ability to provide proof of a clean chain of title through documentation of valid transfer of the original Promissory Note and original Deed of Trust regarding the Property.

2. Defendants Wilmington and Selene, or any of their successor agents, cannot be holders in due course as to the Plaintiff's Promissory Note per RCW 62A. 3-203(b), because

defendants have not proven any of them became the holders of the original Note at the time of the transfers.

3. Defendant Wilmington and Selene, or any of their successor agents, cannot acquire rights of a holder in due course by a transfer, directly or indirectly, from a holder in due course, as described in RCW 62A.3-302(2)(iii), if the transferee engaged in fraud or illegality affecting the instrument. As signing agent for MERS and BOA, "Romo" should have known of the defect consisting of the lack of proof of a clean chain of title to the Plaintiff's Note and DOT at the time of the alleged transfer. Additionally, Pretium took the instrument *with* "notice that the instrument is overdue or has been dishonored or that there is an uncured default…": Plaintiff's loan was included in a pool of a "non-performing" loans sold by FNMA to Pretium in May 2016. This further prevents Wilmington from acquiring rights of a holder in due course.

### V. Second Amended Cause of Action—Plaintiff's CPA Cause of Action for Violations of the DOTA Does Not Require Completion of a Foreclosure Action by Defendants.

1. Even where there is no completed foreclosure sale and no allegation the plaintiff has paid any foreclosure fees, it is possible for a plaintiff to suffer injury to business or property caused by violations of the DTA that could be compensable under the Consumer Protection Act ("the CPA"). *Frias v. Asset Foreclosure Services et al*, 334 P.3d 529, 537 (2014).

2. Because the CPA addresses "injuries" rather than "damages," quantifiable monetary loss is not required. *Panag v. Farmers Ins. Co. of Wash.*, 166 Wn.2d 27, 57, 204 P.3d 885 (2009).[1]

3. The injury element can be met even where the injury alleged is both minimal and temporary. *Mason v. Mortgage American Inc.*, 114 Wn.2d 842, 854, 792 P.2d 142 (1990).

4. The McCarthy Holthus law firm representing defendant Selene, the loan servicing agent acting on behalf of defendant Wilmington, failed to "meet and confer" with Plaintiff, as statutorily required by RCW 61.24.031.

5. Following the unilateral scheduling by MH of the requested meeting by letter dated

---

[1] Answer from Washington Supreme Court [En.Banc] to certification of questions from U.S. District Court (W.D. Wash. 2013).

October 27, 2016, Plaintiff sent a letter dated November 3, 2016, two emails on November 4 and one on November 7, 2016 seeking to reschedule that meeting, because she had medical procedures scheduled which conflicted with the January 10, 2017, date.

6. MH acknowledged receiving the letter and the three email requests from Plaintiff in a reply email dated November 10, 2016, indicating MH would "review and respond."

7. On February 1, 2017, Plaintiff received a letter, dated January 30, 2017, from Robert McDonald of defendant QLS acknowledging receipt of Plaintiff's QWR. This letter misstated that the meeting she requested had taken place on January 10, 2017, but the Plaintiff failed to attend.

8. On February 2, 2017, Plaintiff spoke by phone with Mr. McDonald and informed him of the communications with MH about rescheduling the January 10, 2017, meeting. Copies of correspondence confirming MH's receipt of the request in November 2016 and MH's promise to respond were provided to Mr. McDonald.

9. The meeting was rescheduled for April 5, 2017, one of the dates offered by attorney Burton of MH on February 7, 2017, and accepted by the Plaintiff on February 11, 2017.

10. On February 13, 2017, Plaintiff mailed a QWR directly to Mr. McDonald at defendant QLS, explaining the earlier rescheduling correspondence with attorney Burton at MH; the fact that the meeting on January 10, 2017, never took place; that defendant Selene had not complied with earlier QWR requests for Selene to provide a full account history of Plaintiff's loan; and, a request that QLS disclose the relationship between itself and the MH firm, representing Selene.

11. A letter from defendant Selene, dated February 9, 2017, and received by Plaintiff on February 13, 2017, confirmed that MH represented Selene. However, the letter misstated that the meeting had taken place on January 10, 2017, but Plaintiff failed to appear.

12. In an email on February 16, 2017, Plaintiff called to the attention of attorney Burton at MH that the letter from his client, defendant Selene, dated February 9, 2017, again incorrectly stated that the meeting had taken place on January 10, 2017, but that Plaintiff failed to appear. Plaintiff requested that attorney Burton inform his client, Selene, and McCarthy Holthus's agents that the January 10, 2017, meeting should have been cancelled (if it was actually held), that Mr. Burton was rescheduling the meeting, and to inform QLS that it should refrain from taking any further action.

AMENDED COMPLAINT                                                    AYNA MEPPELINK, PLAINTIFF

12

13. In a reply email dated February 20, 2017, attorney Burton stated, "We are in the process of scheduling another face to face meeting. My staff will reach out to you this week to set that up." By March 13, 2017, Mr. Burton had still not set up the meeting, neither had he apparently followed up on the Plaintiff's request that he contact Selene and intervene on Plaintiff's behalf.

14. On March 3, 2017, defendant QLS commenced a nonjudicial foreclosure action against Plaintiff by posting a Notice of Default, dated March 3, 2017, on the Property.

15. By email dated March 7, 2017, Plaintiff informed attorney Burton of MH that defendant QLS, in its capacity as trustee, at the direction of defendant Selene (as agent for defendant Wilmington) had commenced the nonjudicial foreclosure of Plaintiff's Property. The commencement was based upon the claim by Selene that MH agents had informed the servicer that the "meet and confer" had taken place on January 10, 2017, but Plaintiff failed to appear.

16. In a reply email dated March 7, 2017, attorney Cruz Turcott of MH stated: "I... confirm that I received your message. I will investigate the situation you described and follow up with you as soon as I can. ..." However, no follow-up occurred.

17. Plaintiff has been injured in her business and property by being forced to consult with attorneys to dispel uncertainty regarding the nature of the alleged debt the defendants claim she owes.

18. Defendant Selene (as agent for defendant Wilmington) has refused to provide information in response to Plaintiff's QWRs and to facilitate the meeting statutorily required by RCW 61.24.031.

19. Defendant Selene (as agent for defendant Wilmington) has refused to cooperate with Plaintiff and misrepresented the circumstances surrounding the rescheduled "meet and confer." The borrower, such as the Plaintiff in this situation, has suffered an injury to her Property within the meaning of the CPA. *Klem v. Washington Mutual Bank*, 176 Wn.2d 771, 795, 295 P.3d 1179 (2013).

20. The name of this cause of action is irrelevant, however the historic cause of action against interference with real property by a wrongful foreclosure is trespass on the case, a tort

that has deep support in the common law.[2]

## VI. Third Amended Cause of Action—Selene's Simultaneous Negotiations with Plaintiff and Defendant's Pursuit of a Nonjudicial Foreclosure, Constitutes "Dual Tracking," in Violation of Federal Law and a *per se* CPA Violation.

1. A beneficiary of a deed of trust to occupied residential real property in Washington is required to give the trustee a Foreclosure Loss Mitigation Declaration signed under penalty of perjury that, if a meeting was timely requested by the borrower, such a meeting was held "in compliance with RCW 61.24.031."

2. On September 26, 2016, less than thirty (30) days after receiving the NOPFO from defendant Selene on September 6, 2016, Plaintiff mailed a QWR per RCW 61.24.031(1)(c)(*i*) requesting a meeting with "the beneficiary."

3. On October 31, 2016, the Plaintiff received a letter dated October 27, 2016, from MH, as agent for Selene, unilaterally directing the Plaintiff to "meet and confer" in Kitsap County on January 10, 2017.

4. By letter dated November 3, 2016, and three emails dated November 4 and 7, 2016, Plaintiff explained that medical commitments on and around January 10, 2017, necessitated rescheduling the meeting. On November 10, 2016, MH acknowledged receiving this letter and emails, and stated, "We will review and respond."

5. On February 7, 2017, more than ninety (90) days after the letter was sent by Plaintiff, attorney Samuel Burton of MH offered to reschedule the loss mitigation meeting. April 5, 2017, one of the dates offered by attorney Burton, was accepted by the Plaintiff in her reply email on February 11, 2017.

6. Emails between attorney Burton and the Plaintiff on February 16 and 20, 2017, confirmed that MH, as agent for defendant Selene, was aware that the meeting had not taken place and was to be rescheduled. Plaintiff requested that attorney Burton make Robert McDonald of defendant QLS aware of the rescheduling of the meeting, and inform Mr. McDonald that the meeting had not taken place.

7. The March 3, 2017, Notice of Default signed by Carlos Guerrero of defendant QLS identifies as an attached document the "Beneficiary or Authorized Agent's Foreclosure Loss

---

[2] David K. DeWolf and Keller W. Allen, *16 Washington Practice Series, Tort Law and Practice* §3:8, (4th ed. 2013).

Mitigation Form," declaring compliance with RCW 61.24.030. The attached "Declaration of Beneficiary," dated February 13, 2017, is signed by Dawn Berry "as an employee" of defendant Selene. The document states that Selene is acting on behalf of defendant Wilmington, et al. Although signed under penalty of perjury, this declaration makes no mention of the above statute, nor of RCW 61.24.031(9), which requires the inclusion of the "Foreclosure Loss Mitigation Form," or equivalent text stating whether or not a meeting had been requested and/or taken place.

8. Defendant Selene, as agent for defendant Wilmington, was not authorized to appoint defendant QLS as trustee and to instruct QLS to commence the nonjudicial foreclosure process, because RCW 61.24.031 had not been complied with.

9. Defendant QLS was not authorized to serve the Notice of Default and commence the nonjudicial foreclosure action, because the required meeting with the Plaintiff had not occurred.

10. Promissory estoppel requires five elements: (1) A promise which (2) the promisor should reasonably expect to cause the promisee to change her position and (3) which does cause the promisee to change her position (4) justifiably relying upon the promise, in such a manner that (5) injustice can be avoided only by enforcement of the promise. *Seattle First Nat'l Bank v. Siebol*, 64 Wn.App 401, 408, 824 P.2d 1252 (Div. III, 1992).

11. Plaintiff repeatedly requested financial information from these defendants in the form of QWRs to establish the arrears and balance owing on the loan obligation. By continuing with meeting negotiations and, concurrently, commencing the nonjudicial foreclosure process, these defendants engaged in "dual tracking." Injustice can only be avoided by striking the nonjudicial foreclosure action directed by defendants.

12. Dual-Tracking is a prohibited lender practice by subsection 1024.41(g) of Regulation X (effective January 10, 2014).[3] By submitting the loan modification application package to Plaintiff on June 10, 2016, and subsequently failing to provide the requested information to Plaintiff, defendants Selene and Wilmington, et al., violated the above subsection by instructing defendant QLS to issue the Notice of Default. Defendants Selene and

---

[3] RESPA (12 U.S.C § 2601 *et seq*).

Wilmington's collective actions constitute "dual tracking."

13. Defendant Selene, in its capacity as agent for defendant Wilmington, deliberately misrepresented that the requested meeting with Plaintiff had occurred on January 10, 2017. This misstatement, made under penalty of perjury, failed to comply with RCW 61.24.030(9).

14. The collective actions of defendants Selene, Wilmington, and QLS have caused the Plaintiff to incur injury to her real property, resulting in damages in amounts to be determined at trial.

15. To prevail in a private Washington CPA claim, a plaintiff must prove an unfair or deceptive act or practice that occurs in trade or commerce, affects the public interest, and causes injury to a person's business or property. *Panag v. Farmers Ins. Co. of Wash.*, 166 Wn.2d 27, 37, 204 P.3d 885 (2009)(citing *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 784, 719 P.2d 531 (1986).

16. Violations of the above state and federal laws and regulations by these defendants constitute *per se* violations of the Washington Consumer Protection Act. RCW 61.24.135(2)(c).

**VII.   Fourth Amended Cause of Action—QLS's Refusal to Investigate Plaintiff's Statement that No Meeting Had Taken Place, as a Precondition to Commencement of the Nonjudicial Foreclosure Process, is a Breach of This Trustee's Fiduciary Duties Owed Plaintiff.**

1. One of the three goals of the DTA is to "prevent wrongful foreclosure." (*Cox v. Helenius*, 693 P.2d 683, 686 (Wash. 1985).

2. A trustee must be impartial and not controlled by the beneficiary. *Klem v. Washington Mutual Bank*, 176 Wn.2d 771, 795, 295 P.3d 1179, 1188 (2013).

3. One of several specific duties that Washington trustees owe the grantor, such as the Plaintiff in this case, includes giving proper statutory notices, such as the notice of default. RCW 61.24.030(9).

4. The information the Plaintiff provided to defendant QLS, that the meeting had not occurred as required by statute, was sufficient to put QLS on notice that the prerequisites for commencing the nonjudicial foreclosure process were lacking.

5. Defendant QLS's election to commence the nonjudicial foreclose process despite receipt of copies of emails between Plaintiff and attorney Burton of MH regarding the intent to reschedule the meeting for April 5, 2017, constitutes a breach of the trustee's duties owed the Plaintiff.

### VII.  Fifth Amended Cause of Action—The Wrongful Commencement of a Nonjudicial Foreclosure Must Be Set Aside.

1. RCW 61.24.010 creates a duty and a corresponding right. "The trustee or successor trustee has a duty of good faith to the borrower, beneficiary, and grantor." RCW 61.24.010(4).

2. Issuing the Notice of Default and the Notice of Trustee's Sale without proof of compliance with RCW 61.24.030(9) renders this non-judicial foreclosure process flawed. Chapter 61.24 RCW requires strict compliance with the statutory requirements of the DOTA, because there is no judicial oversight of the trustee's conduction of the process and sale. Electing to commence the nonjudicial foreclosure without investigating, by contacting attorney Burton of MH, whether or not the requested meeting had taken place, constitutes a lack of due diligence on the trustee's part and a material defect which negates the process.

3. Simply resetting the foreclosure sale date within 45 days of issuance of a hypothetical post-Summary Judgment Order per RCW 61.24.130(3) does not correct the defect.

4. Plaintiff is entitled to the relief of cancellation of this foreclosure.

### IX.  Amended Prayer For Relief

WHEREFORE Plaintiff prays for relief as follows:

1. A declaratory judgment determining that the collective actions of defendants Selene and Wilmington warrant setting aside the pending foreclosure action against Plaintiff, as being in violation of the Washington CPA, resulting in injury to Plaintiff's real property, in an amount to be proven at trial;

2. A declaratory judgment determining that defendant QLS, as trustee, breached its duty of good faith to the plaintiff, to the degree that the entire foreclosure process must be negated;

3. For attorney fees and costs as the Court deems proper;

4. For such other and further relief to Plaintiff as might be just and equitable.

I, Ayna Amanda Meppelink, hereby declare under penalty of perjury under the laws of the State of Washington that the above statements are true and correct.

Signed in Olalla, Washington, on

June 11th, 2019

Ayna A. Meppelink
11700 Carriage Place SE
Olalla, WA  98359
(360) 895-0675

LIST OF EXHIBITS – AYNA MEPPELINK vs. WILMINGTON, et al; CASE NO. 17-2-00839-9
AMENDED COMPLAINT

| | |
|---|---|
| A | April 17, 2007, ReconTrust recording of two Substitutions of Trustee and Full Reconveyances by RT and MERS to RT. |
| B | October 17, 2011, CoreLogic recording of Assignment of DOT by MERS to BOA. |
| C | Thirteen (13) assignments bearing questionable "Cynthia Romo" signatures. |
| D | May 1, 2015, CoreLogic recording of DOT by BOA to FNMA. |
| E | May 6, 2016, Meridian recording of DOT by FNMA to Wilmington. |
| F | May 2016, Plaintiff's loan in pool sold by FNMA to Pretium. |
| G | Undated Note Allonge: FNMA to Wilmington, signed by "Steve Allison." |
| H | February 7, 2017, "Steve Allison" signature on Assignment DOT, Skagit County. |
| I | July 15, 2016, Plaintiff's QWR to Selene disputing debt. |
| J | July 26, 2016, Notice of Default and Intent to Accelerate by Selene, dated July 20. |
| K | September 6, 2016, defective NOPFO by Selene. |
| L | September 26, 2016, Plaintiff's QWR to Selene requesting meeting. |
| M | October 31, 2016, letter from McCarthy Holthus setting January 10 meeting. |
| N | November 10, 2016, MH acknowledgment of Plaintiff's request to change meeting date. |
| O | January 11, 2017, Plaintiff's letter to Selene re. MH rescheduling meeting. |
| P | January 19, 2017, recorded POA by Selene to Wilmington. |
| Q | January 20, 2017, Validation of Debt Notice from QLS. |
| R | January 21, 2017, Plaintiff's response to Validation of Debt Notice, disputing debt. |
| S | January 30, 2017, QLS letter claiming meeting was held but Plaintiff did not attend. |
| T | February 7, 2017, MH's email apologizing and proposing meeting dates. |
| U | February 11, 2017, Plaintiff's response to MH, selecting April 5 meeting date. |
| V | February 13, 2017, Plaintiff's letter to QLS re. meeting and legitimacy of QLS. |

AMENDED COMPLAINT-LIST OF EXHIBITS- 1                          AYNA MEPPELINK, PLAINTIFF

W      February 13, 2017, Selene's letter claiming Plaintiff failed to attend the meeting.

X      February 16, 2017, Plaintiff's email to MH and Burton's February 20 response.

Y      February 27, 2017, ServiceLink recording: Selene appoints QLS Successor Trustee.

Z      March 3, 2017, QLS's Notice of Default served on Plaintiff prior to meeting.

AA     March 6, 2017, Plaintiff's demand to QLS to retract NOD.

BB     March 7, 2017, Plaintiff's email to MH's Burton and Turcott's response.

CC     April 10, 2017, QLS's recording of Notice of Trustee Sale.

I, Ayna A. Meppelink, declare under penalty of perjury, under the laws of the State of Washington, that the above-listed exhibits submitted into evidence are true and correct copies of the original documents.

Signed in Olalla, Washington, on

Date: June 10, 2019

Ayna A. Meppelink